## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
LISA D.,                        )
                                )
               Plaintiff,       )
                                )
     v.                         )          1:25CV230
                                )
FRANK J. BISIGNANO,             )
Commissioner of Social          )
Security,                       )
                                )
               Defendant.¹      )
```

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Lisa D., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 11 (Plaintiff's Brief); Docket Entry 12 (Commissioner's Brief)). For

---

¹ The United States Senate confirmed Frank J. Bisignano as the Commissioner of the Social Security Administration on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should substitute as Defendant in this suit. Neither the Court nor the parties need take further action to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 212-37), alleging a disability onset date of June 12, 2021 (see Tr. 212, 215, 225, 232).  Upon denial of that application initially (Tr. 70-79, 94-98) and on reconsideration (Tr. 80-89, 102-06), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 107). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 42-69.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 18-41.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 210-11, 1230-32), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

> 1.  [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2025.
>
> 2.  [Plaintiff] has not engaged in substantial gainful activity since June 12, 2021, the alleged onset date.
>
> 3.   [Plaintiff] has the following severe impairments: a back disorder; obesity; asthma; and chronic bronchitis.

---

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 9 at 1.)

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform sedentary work . . . except [she] can climb ramps and stairs frequently. She can never climb ladders, ropes, or scaffolds. She can balance frequently on level surfaces. She can stoop, kneel, crouch, and crawl occasionally. She must avoid concentrated exposure to pulmonary irritants, such as fumes, dusts, and gases. She must avoid concentrated exposure to hazards, such as unprotected heights.

. . .

6. [Plaintiff] is capable of performing past relevant work as a newspaper delivery driver. This work does not require the performance of work precluded by [Plaintiff]'s residual functional capacity.

. . .

In addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that [Plaintiff] can also perform, considering [her] age, education, work experience, transferable skills, and residual functional capacity.

. . .

7. [Plaintiff] has not been under a disability, as defined in the . . . Act, from June 12, 2021, through the date of th[e ALJ's] decision.

(Tr. 24-35 (bold font and internal parenthetical citations omitted).)

3

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If

4

there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id.

5

(quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the

---

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied."  Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled."  Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]."  Id. at 179.[5]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant  work"; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

"whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

### B. Assignment of Error

Plaintiff's first and only assignment of error maintains that "[t]he ALJ erred by failing to perform a proper function-by-function evaluation of [Plaintiff]'s ability to sit when formulating the RFC." (Docket Entry 11 at 4 (bold font and block formatting omitted).) In particular, Plaintiff notes that "the ALJ found that [Plaintiff] would be expected to sit for a full 6 hours out of an 8-hour workday" (id. at 5 (citing Tr. 27)), and Plaintiff highlights her own statements (see id. at 4 (citing Tr. 47, 55-58, 60)), as well as medical evidence (see id. at 5 (citing Tr. 850-52, 787)), that she believes support greater limitations in the RFC on her ability to sit. In Plaintiff's view, although "[t]he ALJ

---

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

briefly summarized [Plaintiff]'s testimony" (id. at 6 (citing Tr. 28)) and "some of the medical evidence in the record" (id. (citing Tr. 28-30)), "the ALJ d[id] not explain how the evidence she cite[d] demonstrate[d] that [Plaintiff] c[ould] perform [six hours] of sitting total in the workday or for how long [she] c[ould] maintain a seated position at one time" (id. at 5-6) in violation of Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018), Monroe v. Colvin, 826 F.3d 176, 189-90 (4th Cir. 2016), and Mascio v. Colvin, 780 F.3d 639-40 (4th Cir. 2015) (see id. at 6-7). Plaintiff further deems the ALJ's failure to "make any findings regarding how long [Plaintiff] is capable of sitting **at one time** . . . significant because, with a sedentary RFC, [she] would be expected to maintain a seated position for about three quarters of the workday." (Id. at 7 (emphasis in original) (citing Holland v. Commissioner of Soc. Sec. Admin., Civ. No. 17-1874, 2018 WL 1970745, at *10 (D. Md. Apr. 25, 2018) (unpublished), for proposition that "ALJ needs to explain how the determination in frequency of change of position was arrived upon").)

Plaintiff additionally contends that, "'[h]aving met [her] threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [she wa]s entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that [her] pain [wa]s so continuous

9

and/or so severe as to prevent [her] from working a full eight hour day.'" (Id. at 8 (quoting Hines, 453 F.3d at 565); see also id. at 8-9 (quoting Oakes v. Kijakazi, 70 F.4th 207, 215 (4th Cir. 2023), for proposition that case should result in remand where "ALJ 'never addressed the fact that disability benefits can be awarded on the sole basis of an objective impairment and derivative subjective pain'").) Plaintiff further emphasizes that "[t]he [United States Court of Appeals for the] Fourth Circuit recently addressed a similar issue . . . [and] determin[ed] that the ALJ should have specifically addressed the claimant's testimony regarding how long [s]he was capable of sitting and, further, that ALJs have to perform a function-by-function analysis of *contested* and *relevant* functions." (Id. at 8 (emphasis in original) (citing Dowling v. Commissioner of Soc. Sec., 986 F.3d 377, 388-89 (4th Cir. 2021)).) Plaintiff ultimately contends that "this case must be remanded for an evaluation and discussion of [Plaintiff]'s ability to sit[,]" and that "vocational evidence should be further developed concerning the impact of a 'sit/stand option' on the sedentary occupational base." (Id. at 9.) Those contentions lack merit.

RFC measures "the most a claimant can do despite" any physical and mental limitations, Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a), and represents a claimant's "'ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis,'" i.e., "'8 hours a day,

for 5 days a week, or an equivalent work schedule,'" Hines, 453 F.3d at 562 (emphasis omitted) (quoting Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1 (July 2, 1996) ("SSR 98-6p")). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See id. at 562–63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy), see 20 C.F.R. § 404.1567, and any non-exertional limitations may further restrict the claimant's ability to perform jobs within an exertional level, see 20 C.F.R. § 404.1569a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion." Woods, 888 F.3d at 694 (internal emphasis, quotation marks, and brackets omitted). As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions

11

and assess his or her work-related abilities on a function-by-function basis[ and,] . . . [o]nly after that[,] may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. See Mascio, 780 F.3d at 636–37. Specifically, the court stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," id. at 636 (internal quotation marks omitted), but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Here, the ALJ did not expressly assess Plaintiff's ability to sit on a function-by-function basis (see Tr. 27-33); however, no basis for remand exists, because the ALJ's decision nevertheless supplies the necessary "accurate and logical bridge," Woods, 888 F.3d at 694 (internal quotation marks omitted), between the evidence and her findings that Plaintiff's back disorder and obesity (A) qualified as severe impairments at

12

step two of the SEP (see Tr. 24), but (B) did not cause limitations greater than the RFC's allowance of up to six hours of sitting (in no more than two hour intervals generally) in an eight-hour workday (see Tr. 27).[7]

As an initial matter, to the extent Plaintiff intends her contention that she could "'rely exclusively on subjective evidence to prove . . . that [her] pain [wa]s so continuous and/or so severe as to prevent [her] from working a full eight hour day'" (Docket Entry 11 at 8 (quoting Hines, 453 F.3d at 565)) to mean that the ALJ erred by considering objective medical evidence in analyzing the intensity, persistence, and limiting effects of Plaintiff's

---

[7] Plaintiff's assertion that the ALJ failed to "make any findings regarding how long [Plaintiff] is capable of sitting *at one time*" (Docket Entry 11 at 7 (emphasis in original)) falls short. Although the RFC does not contain an express finding regarding Plaintiff's ability to sit (see Tr. 27), the ALJ found Plaintiff remained capable of performing "sedentary work as defined in 20 CFR 404.1567(a)" (id.). That regulation defines sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a) (emphasis added). "'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday" and, thus, "[s]itting would generally total about 6 hours of an 8-hour workday." Social Security Ruling 96-9p, Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work-Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 1996 WL 374185, at *3 (July 2, 1996) ("SSR 96-9p"). Accordingly, the ALJ implicitly found Plaintiff capable of sedentary work's default requirement of up to six hours total of sitting in an eight-hour workday, but in no more than two-hour increments generally with standard breaks, see id. at *6 ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals.").

13

symptoms, such an argument misses the mark.  Although the Fourth Circuit has "reiterate[d ] long-standing [Circuit] law . . . that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms," <u>Arakas v. Commissioner of Soc. Sec. Admin.</u>, 983 F.3d 83, 98 (4th Cir. 2020), long-standing cases containing the substance of that holding, such as <u>Craig</u> and <u>Hines</u> (among others), clarify that, "[a]lthough a claimant's allegations about her pain may not be discredited <u>solely</u> because they are not substantiated by <u>objective evidence of the pain itself or its severity</u>, they need not be accepted to the extent they are inconsistent with the available evidence, including <u>objective evidence of the underlying impairment</u>, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers," <u>Craig</u>, 76 F.3d at 595 (emphasis added); <u>see also</u> <u>Hines</u>, 453 F.3d at 565 n.3 (quoting <u>Craig</u>, 76 F.3d at 595).

In other words, under the appropriate circumstances, an ALJ <u>may</u> choose to rely exclusively on a claimant's subjective symptom reports to find disabling symptoms; however, <u>Oakes</u>, <u>Arakas</u>, <u>Craig</u>, and <u>Hines</u> do not <u>compel</u> ALJs to consider <u>only</u> subjective evidence, as such a requirement would conflict with both the Act and its implementing regulations, which plainly require ALJs to consider a variety of factors, <u>including objective medical evidence</u>, in evaluating the intensity, persistence, and limiting effects of

14

symptoms.  See 42 U.S.C. § 423(d)(5)(A) ("Objective medical evidence of pain . . . established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether [an] individual is under a disability." (emphasis added)); see also 20 C.F.R. § 404.1529(c) (directing ALJs to consider a claimant's medical history, medical signs and laboratory findings, daily activities, testimony about nature and location of pain, medication and other treatment used to alleviate pain, along with medical opinions, in assessing intensity of a claimant's symptoms). Here, in compliance with Oakes, Arakas, Hines, Craig, and the applicable regulations, the ALJ considered the objective medical evidence as one part of her evaluation of the intensity, persistence, and limiting effects of Plaintiff's alleged pain, as the ALJ also considered Plaintiff's daily activities (see Tr. 28), medication and other treatment used to alleviate pain (see Tr. 28-31) and, as discussed in more detail below, the opinion evidence of record (see Tr. 31-33).

Indeed, the ALJ's evaluation of Plaintiff's subjective symptom reports supports and helps to explain the ALJ's RFC finding that Plaintiff remained able to sit for a total of six hours (in two-hour increments generally) in an eight-hour workday (see Tr. 27). In that regard, the ALJ explicitly acknowledged that "[Plaintiff] indicated a 15-minute limit on sitting because her feet become

15

numb" (id. (referencing Tr. 57)), "described sitting for a few minutes when she gets up in the morning, getting ice and lying on the couch on the ice for about 20 minutes, and getting back up" (id. (referencing Tr. 58)), "testified that she lies down on her side on heat for about 20 minutes sometimes" (id. (referencing Tr. 58)), and "testified that she does th[o]se things repeatedly during the day" (id. (referencing Tr. 58)). The ALJ thereafter found that "[Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms" (Tr. 28), but that "[her] statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record" (id. (emphasis added)) and, beyond Plaintiff's meritless assertions under Oakes and Hines (see Docket Entry 11 at 8-9) discussed above, she has not challenged those findings by the ALJ (see id. at 4-9).

The ALJ's evaluation of the opinion evidence provides further support for the sitting allowance in the RFC. In particular, the ALJ found "persuasive" (Tr. 31) the opinions of the state agency medical consultants that Plaintiff remained capable of up to six hours total of sitting in an eight-hour workday (see Tr. 75, 85). Notably, Plaintiff did not challenge the ALJ's reliance on those opinions. (See Docket Entry 11.) Moreover, the ALJ found "partially persuasive" (Tr. 33) the opinion of Plaintiff's orthopedist, Dr. David Musante, on October 6, 2021, that

16

Plaintiff's lower back and leg pain limited her to "[l]ight duty[; l]ifting, pushing, pulling up to 5-10 pounds[; no] ladder climbing[; and a]lternating sitting and standing every 30 minutes as needed" (Tr. 852 (emphasis added)). The ALJ explained further as follows:

> Dr. Musante's opinion of light duty is internally inconsistent with his opinion that [Plaintiff] is limited to lifting and carrying up to 10 pounds. Nevertheless, it is consistent with the [RFC], which provides for sedentary work. Alternating sitting and standing every 30 minutes, as needed, is not persuasive because it is vague, indefinite, and not explained. This limitation is also not supported by objective evidence, such as an even heel-to-toe gait noted on September 2, 2021, a pain level of two noted on September 14, 2021, and physical therapy records from October 20, 2021, showing normal active range of motion and 5/5 hip and knee strength, and appears to be based on [Plaintiff]'s statements rather than objective findings.

(Tr. 33 (emphasis added) (internal parenthetical citation omitted).)

Plaintiff first challenges the ALJ's criticism of Dr. Musante's opinion regarding Plaintiff's need to alternate sitting and standing as "vague, indefinite, and not explained" (id.), arguing that "the need to adjust posture every 30 minutes appears to be rather specific." (Docket Entry 11 at 7.) Plaintiff's argument glosses over the words "as needed" in Dr. Musante's opinion that Plaintiff should "[a]lternat[e] sitting and standing every 30 minutes as needed" (Tr. 852 (emphasis added)). Dr. Musante's inclusion of those words injects ambiguity into his

17

opinion, because they suggest that Plaintiff may not need to alternate sitting and standing every 30 minutes and certainly do not amount to an opinion that Plaintiff's impairments required her to alternate sitting and standing every 30 minutes.

Plaintiff further contests the ALJ's observation that the objective medical evidence did not support Dr. Musante's sit/stand option opinion (see Tr. 33), because "[Plaintiff]'s MRI demonstrates significant degenerative processes in the lumbar spine[,]" and "the objective measures [the ALJ] points to, such as heel-to-toe gait, are more indicative of [Plaintiff]'s ability to stand walk [sic]." (Docket Entry 11 at 7.) To begin, the mere diagnosis of a condition on an imaging report does not compel the ALJ to adopt any particular functional limitations arising out of that diagnosis. See Horton v. Commissioner, Soc. Sec. Admin., No. 12CV1940, 2013 WL 1953328, at *2 (D. Md. May 9, 2013) (unpublished) ("[A]n RFC is properly expressed in terms of abilities and limitations, not diagnoses."). Moreover, the ALJ expressly discussed the findings on Plaintiff's MRI of the lumbar spine (see Tr. 28), found Plaintiff's back disorder a severe impairment at step two of the SEP (see Tr. 24), and included significant lifting/carrying and postural limitations in the RFC to account for that impairment (see Tr. 27).

Furthermore, the ALJ did not err by relying on "objective evidence[] such as an even heel-to-toe gait," "normal active range

18

of motion[,] and 5/5 hip and knee strength" to discount Dr. Musante's sit/stand option opinion.  (Tr. 33.)  Because Dr. Musante did not explain why he included the sit/stand option in his opinion, the record remains unclear whether he included it to accommodate a limitation in Plaintiff's ability to stand, her ability to sit, or both.  (See Tr. 852.)  In fact, a review of the over 2,000-page record reveals that Plaintiff reported limitations on her ability to sit on only two occasions: 1) her testimony on July 21, 2023, at the hearing before the ALJ (see Tr. 57-58, 60), and 2) her written statement on May 19, 2022, on a disability questionnaire supplied by her former employer's long-term disability carrier in connection with a review to determine her continuing eligibility for benefits (see Tr. 716, 725).[8]  All of Plaintiff's remaining statements in the record regarding the functional impact of her back and leg pain centered on her limitations in standing and walking.  (See Tr. 55 (reporting pain when she stands too long), 56 (stating that she could not walk that far), 57 (testifying that she could stand for 30 minutes before her legs burn and her lower back hurts), 282 & 288 (Function Report indicating "[her] ability to work [wa]s most significantly impacted

---

[8] Despite Plaintiff's assertion to the long-term disability carrier that she could not sit for long periods due to back pain and foot numbness (see Tr. 725), the carrier terminated Plaintiff's benefits because the medical evidence supported that Plaintiff could perform sedentary work and did not "support the need to change from seated to standing as needed for comfort" (Tr. 409).

19

by [her] problems with . . . lifting, squatting, standing, kneeling and stair climbing," and that she could not "stand for long periods" or "walk very far," and not checking box for "Sitting" as impacted by her impairments (emphasis added)), 296 (Disability Report – Appeal alleging limitations in bending, kneeling, lifting, reaching, squatting, stair climbing, and standing), 432 (reporting leg weakness after standing for 25 minutes), 451 (noting pain at its worst after prolonged standing and that she could walk for only 15 minutes), 466 (complaining of sharp back pain when she stood too long and that she could not stand more than 10 minutes), 576 (claiming burning in right thigh after standing for long periods that resolved with sitting), 1630 (recording back pain aggravated by lying down and standing), 1639 (asserting neurological symptoms in thighs after prolonged standing that sitting relieved), 1934 (seeking treatment for hip and thigh pain aggravated by stairs, jumping, kneeling, squatting, and standing), 2008 (alleging leg numbness and tingling after prolonged standing), 2046 (indicating that she experienced pain in right sacroiliac joint after walking).) Indeed, Plaintiff reported to Dr. Musante on August 12, 2021, less than two months before he offered the sit/stand option opinion, that standing and walking aggravated her back and leg pain, that she could not stand for more than 10 minutes or walk more than one block, and "that she ha[d] no leg pain when she [wa]s seated." (Tr. 455 (emphasis added); see also Tr. 461 (patient

20

questionnaire for Dr. Musante, dated Aug. 12, 2021, indicating that <u>sitting mitigated her symptoms</u>).)  Consistent with those reports, Dr. Musante opined, on September 3, 2021, that Plaintiff should not perform any prolonged <u>standing or walking</u>, but did not limit Plaintiff's ability to <u>sit</u>.  (<u>See</u> Tr. 1136.)  That state of the record undermines the notion that Dr. Musante included the sit/stand option (even "as needed") to accommodate any limitation in Plaintiff's ability to <u>sit</u>, rather than to account for her reported limitations in <u>standing</u>.  Accordingly, the ALJ's reliance on findings such as a normal gait, full lower extremity strength, and normal lower extremity range of motion did undermine, to some degree, Dr. Musante's sit/stand option opinion.

Moreover, by pointing to record evidence Plaintiff believes supports greater limitations on her ability to sit, she misinterprets this Court's standard of review.  The Court must determine whether substantial evidence, i.e., "more than a mere scintilla of evidence but . . . somewhat less than a preponderance," <u>Mastro</u>, 270 F.3d at 176 (brackets and internal quotation marks omitted), supported the ALJ's finding regarding Plaintiff's ability to sit, and not whether other record evidence weighed against that finding, <u>see</u> <u>Lanier v. Colvin</u>, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the

21

ALJ's decision, does not mean that the decision is unsupported by substantial evidence."). Here, notwithstanding some record evidence that might have supported greater sitting limitations, the ALJ's discussion of the medical evidence, evaluation of Plaintiff's subjective symptom reporting, and assessment of the opinion evidence amounts to substantial evidence supporting the RFC's allowance of up to six hours total of sitting (in no more than two-hour intervals generally) (see Tr. 27).

Plaintiff's reliance on Dowling fares no better. In that regard, Plaintiff notes that "[t]he Fourth Circuit recently . . . determin[ed] that the ALJ should have specifically addressed the claimant's testimony regarding how long [s]he was capable of sitting and, further, that ALJs have to perform a function-by-function analysis of contested and relevant functions." (Docket Entry 11 at 8 (citing Dowling, 986 F.3d at 388-89).) In Plaintiff's view, "[she] has presented evidence that she could not perform the full postural demands of sitting required of the ALJ's RFC, and the ALJ should have adequately evaluated and explained her findings regarding th[at] contested function." (Id.)

In Dowling, the claimant's treating physician had opined that the claimant's irritable bowel disease limited her "to sit for only 15 to 30 minutes at one time, and [less than] two hours total in an 8-hour working day." Dowling, 986 F.3d at 384 (emphasis added) (internal quotation marks omitted). The Fourth Circuit found that

22

the ALJ reversibly erred by discounting that opinion, id. at 386, because "it [wa]s far from apparent that the ALJ considered – or was even aware of – each of the [regulatory] factors [governing the evaluation of opinion evidence]," id. at 385 (citing 20 C.F.R. 404.1527(c)). That opinion, together with Plaintiff's statements "throughout her administrative and judicial proceedings that her [irritable bowel disease] and anal fissure cause[d] her to experience discomfort when she s[at] for a prolonged period of time" led the Fourth Circuit to find that the ALJ failed to "properly assess the extent to which [the claimant]'s sitting problems impacted her ability to work" in the RFC analysis. Id. at 388 (emphasis added).[9]

Here, unlike in Dowling, Plaintiff fails to point the Court to any opinion or medical evidence supporting her inability to sit for the two-hour intervals required by sedentary work. (See Docket Entry 11 at 1-9.)[10] Moreover, also in contrast to Dowling, and as

---

[9] Significantly, the Fourth Circuit found four other deficiencies in the ALJ's decision, see id. at 385-89, which led the court to find the ALJ's faulty evaluation of the plaintiff's ability to sit an additional ground for remand, see id. at 388-89. Plaintiff does not raise any other deficiencies in the ALJ's decision-making here. (See Docket Entry 11.)

[10] Plaintiff points to physical therapy records indicating that "[she] continued to rotate between sitting and standing exercises to try and maintain low levels of back pain" as supportive of greater sitting limitations than reflected in the RFC (Docket Entry 11 at 5 (citing Tr. 787)); however, given Plaintiff's repeated reports to the therapist of difficulty standing and lack of reports of difficulty sitting (see Tr. 429, 432, 435, 451-52; see also Tr. 453 (reflecting therapy goal of standing and walking for thirty minutes without increased symptoms)), the record does not warrant a conclusion that the therapist rotated Plaintiff between sitting and standing exercises to accommodate any difficulty in sitting rather than her reported difficulty standing.

23

detailed above, Plaintiff did not complain of difficulty <u>sitting</u> "throughout her administrative . . . proceedings," <u>Dowling</u>, 986 F.3d at 388, but rather focused her complaints on difficulty <u>standing and walking</u> (<u>see</u> Tr. 55-57, 282, 288, 296, 432, 451, 45). Put simply, <u>Dowling</u> does not aid Plaintiff's cause.

In light of the foregoing analysis, Plaintiff has not shown that the ALJ failed to properly evaluate Plaintiff's ability to sit, and, thus, Plaintiff's sole assignment of error falls short.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED,** and that this action is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 13, 2026

24